**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CANDY PETERSON,

        **Plaintiff,**                      **CIVIL ACTION NO. 14-cv-13116**

       **v.**                          **DISTRICT JUDGE PATRICK J. DUGGAN**

**COMMISSIONER OF**               **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Candy Peterson seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 17). Plaintiff also filed a response to Defendant's Motion. (Docket no. 18.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.      RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be GRANTED IN PART and Defendant's Motion for Summary Judgment (docket no. 17) be DENIED. It is further recommended that this matter be remanded

for proper consideration and discussion of Dr. Pettit's medical opinion as a treating physician in accordance with 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

## II.     PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of April 26, 2011, alleging that she has been disabled since February 5, 2011, due to herniated discs in her back, fibromyalgia, high blood pressure, carpal tunnel syndrome, bipolar disorder, depression, muscle spasms, tremors, sleep apnea, and a cracked spine. (TR 280-90, 302, 306.) The Social Security Administration denied Plaintiff's claims on November 14, 2011, and Plaintiff requested a *de novo* hearing. (TR 165-91, 224-26.) On February 5, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Mary Peltzer. (TR 50-84.) In a March 1, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 29-45.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter as well as a chronological summary of her medical record. (Docket no. 14 at 4-9). The ALJ set out a detailed, factual recitation with regard to Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in her decision, which Defendant adopts. (TR 36-41, 43; docket no. 17 at 5.) There are no material inconsistencies between Plaintiff's and the ALJ's accounts of the record; therefore, the undersigned will incorporate these factual recitations

by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 5, 2011, and that Plaintiff suffered from the following severe impairments: fibromyalgia; degenerative disc disease, lumbar and cervical spine; obesity; migraine headaches; and mental disorder, diagnosed to include depression, generalized anxiety disorder, panic disorder without agoraphobia, and bipolar disorder. (TR 31-33.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 33-36.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: work that can be done in a seated or standing position or combination thereof; occasional climbing of stairs and ramps; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; no exposure to temperature extremes; avoid concentrated exposure to vibrations and respiratory irritants such as dust and fumes; and no exposure to hazards such as unprotected heights. She can perform unskilled work with specific vocational preparation (SVP) of one or two; can make judgments on simple work-related decisions; and can have no contact with the general public but occasional contact with coworkers. She can stay on task at least 90 percent of the work day, exclusive of normal breaks.

(TR 36-42.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 42-43.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from February 5, 2011, through the date of the ALJ's decision. (TR 43-45.)

### V.      LAW AND ANALYSIS

#### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

4

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).    This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.      Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded for an award of benefits under sentence four because the ALJ (1) failed to mention the opinions of Plaintiff's treating psychiatrist, Dr. Pettit, and Plaintiff's treating therapist, Ashley Hudson, LPC, and (2) "erred in giving 'little weight' to the opinion of the consulting psychological examiner, Elizabeth Bishop, Ph.D."  (Docket no. 14 at 10-15.)

### 1.     Dr. Pettit

Plaintiff claims that the ALJ erred because she never mentioned Plaintiff's treating psychiatrist, Dr. Pettit, by name or stated what weight she assigned to his opinion.  (*Id*. at 10.)  Plaintiff argues that while the ALJ cited to Dr. Pettit's records, she did not specifically discuss Dr. Pettit's opinion or indicate why she did not include Dr. Pettit's diagnoses of post-traumatic stress disorder (PTSD) and obsessive-compulsive disorder (OCD) among Plaintiff's severe impairments.  Later, in her Response to Defendant's Motion, Plaintiff clarifies that she did not intend the prior statement to be a challenge to the ALJ's step-two determination; rather, she intended it to demonstrate that the ALJ failed to properly evaluate and weigh the record evidence.  (Docket no. 18 at 5.)

It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.   20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R.

7

§§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight.  *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Dr. Pettit of Family Counseling and Children's Services treated Plaintiff for her mental impairments seven times between January 18, 2012 and October 3, 2012.  (TR 457-87.)  The parties do not dispute that Dr. Pettit was Plaintiff's treating psychiatrist.  Dr. Pettit's medical records consist of two-page Psychiatric Outpatient Progress Notes, which document each of Plaintiff's visits.  Specifically, the Progress Notes document Dr. Pettit's diagnoses of Plaintiff's impairments, Plaintiff's subjective statements regarding her symptoms, Plaintiff's prescribed medications, Dr. Pettit's checkmark assessment of Plaintiff's mental status, the results of Plaintiff's Burns Anxiety and Depression Tests, and a recommended treatment plan.

In her decision, the ALJ discussed Plaintiff's treatment records from Family Counseling and Children's Services in their entirety without regard to any particular medical provider.[1]  (TR 39.)  In this discussion, the ALJ noted that Plaintiff was diagnosed with bipolar disorder, PTSD,

---

[1] The ALJ subsequently discussed the medical opinion of Heather Lucey, Plaintiff's social worker at Family Counseling and Children's Services, in a separate paragraph.  (TR 39-40.)

8

a panic disorder with agoraphobia, and OCD.  The ALJ also discussed Plaintiff's reports of severe panic attacks, being overwhelmed by family issues, and suicidal ideations.  The ALJ then found that Plaintiff's clinical findings in the records from Family Counseling and Children's Services were otherwise unremarkable.  Lastly, the ALJ gave the global assessment of functioning (GAF) scores assessed by the providers at Family Counseling and Children's Services significant weight to the extent that the scores constituted opinion evidence.

Defendant argues that the ALJ did not err by not mentioning Dr. Pettit by name or by not assigning weight to Dr. Pettit's opinion because Dr. Pettit did not author a medical opinion with regard to Plaintiff's impairments or functional limitations.  (Docket no. 17 at 8.)  The Social Security Administration defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, *diagnosis* and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."   20 C.F.R. § 404.1527(a)(2); § 416.927(a)(2) (emphasis added).  Accordingly, Dr. Pettit's diagnoses of Plaintiff's impairments are medical opinions under the Regulations.  Also, the results of Plaintiff's Burns Anxiety and Depression Tests may constitute medical opinions, depending on whether they were completed by Dr. Pettit or Plaintiff, as they measure the severity of a person's anxiety and depression.  Thus, Defendant's argument fails in this regard.

A plain reading of the ALJ's decision demonstrates that she did not assign any weight to the opinions of Dr. Pettit, except for the GAF scores that he assigned to Plaintiff.  While the ALJ noted Dr. Pettit's diagnoses of Plaintiff's impairments in her decision (TR 39), it is not clear whether the ALJ considered, or even recognized, that the diagnoses were medical opinions made by Plaintiff's treating physician, as Dr. Pettit is not mentioned anywhere in the ALJ's decision.

The Court finds that the ALJ failed to evaluate Dr. Pettit's opinions in accordance with the procedural requirements of the treating physician rule, and the circumstances necessary under *Nelson* for the ALJ's failure to constitute harmless error do not exist here.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407-08 (6th Cir. 2009).  Therefore, it is recommended that this matter be remanded for proper consideration and discussion of Dr. Pettit's opinions.  While such an order may ultimately be an exercise in formality, such a discussion is necessary for the Court to engage in meaningful appellate review.  This matter should not be remanded for an award of benefits because the ALJ may still find that Dr. Pettit's opinion is not entitled to controlling weight.  Moreover, even if Dr. Pettit's opinion is adopted, the ALJ must still determine whether Plaintiff is capable of performing a substantial number of jobs in the national economy under a newly developed RFC.

Next, Plaintiff challenges the ALJ's assessments of the opinions of one of Plaintiff's counselors at Family Counseling and Children's Services and the examining State agency psychological consultant.  The undersigned acknowledges that the ALJ's assessments of these opinions may change upon remand after proper consideration and discussion of Dr. Pettit's opinions.  However, the undersigned will review the ALJ's current assessments of these opinions, as challenged by Plaintiff, in the case that they are not affected upon remand.

### 2.    *Ashley Hudson, MA, LPC*

Plaintiff sets forth a similar argument with regard to Ms. Hudson as she did with regard to Dr. Pettit – that the ALJ erred by failing to discuss Ms. Hudson's opinion or mention Ms. Hudson by name in her decision.  (Docket no. 14 at 11-12.)  Ashley Hudson, a Licensed Professional Counselor with Family Counseling and Children's Services, treated Plaintiff five times between May 14, 2012 and September 25, 2012.  (TR 459-71.)

Licensed Professional Counselors are not "acceptable medical sources" under the Regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Opinions from sources that are not considered "acceptable medical sources" are important in assessing the severity of an individual's impairments and the impact those impairments have on the individual's ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). SSR 06–03p clarifies that other source opinions "may be based on special knowledge of the individual" and may be important sources of information in determining the severity of the impairments and how the impairments affect the individual's functional capabilities. SSR 06–03p, 2006 WL 2329939, at *2. That ruling states that there are certain factors an ALJ may weigh when looking at opinions from non-medical sources, such as "the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." 2006 WL 2329939, at *5.

Hence, under the Regulations, the ALJ was not required to specifically weigh and discuss Ms. Hudson's opinion as she was required to do with Dr. Pettit's opinion. The record demonstrates that the ALJ considered Plaintiff's medical records from Family Counseling and Children's Services, including those generated by Ms. Hudson. (*See* TR 33, 35, 39, 42.) Thus, to the extent that Ms. Hudson authored an opinion regarding Plaintiff's impairments, the ALJ considered it in formulating Plaintiff's RFC. Plaintiff's argument fails with regard to Ms. Hudson even though the ALJ did not mention Ms. Hudson by name or specifically discuss her treatment records regarding Plaintiff.

### 3.      *Dr. Elizabeth Bishop, Ph.D.*

Dr. Elizabeth S. Bishop, Ph.D. is a licensed psychologist who conducted a consultative

psychological evaluation of Plaintiff on October 6, 2011, with regard to her alleged disability.

(TR 389-93.)  The parties do not dispute that Dr. Bishop was not a treating physician, as she only

examined Plaintiff once before rendering an opinion on Plaintiff's impairments.  The ALJ is not

bound by a non-treating physician's opinion.  *McKivens v. Comm'r of Soc. Sec.*, No. 11-cv-

14268, 2012 WL 3263847, at *11 (E.D. Mich. Jul. 9, 2012) (citation omitted).   However,

"[w]hen no treating physician opinion has been granted controlling weight ... the medical opinion

of a consultative examiner is to be weighed considering all of the factors identified in 20 C.F.R.

§ 404.1527(c)(1) through (6)."  *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(iii)).  Nevertheless, there

is no per se rule that requires an articulation of each of the six regulatory factors.  *Norris v.*

*Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012)

(citing *Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).

The ALJ discussed Dr. Bishop's opinion as follows:

> On October 6, 2011, the claimant underwent a consultative psychological
> examination by Betty Bishop, Ph.D. (B6F).  The claimant described mood swings
> and both manic and depressive symptoms, and panic attacks occurring every two
> or three days.  Upon examination, she was moderately depressed and rather
> anxious.  Dr. Bishop diagnosed a panic disorder without agoraphobia, and bipolar
> disorder with rapid cycling, and estimated the claimant's GAF to be 55.  She
> concluded that given her rapid cycling bipolar symptoms, panic attacks, possible
> personality disorder, and multiple medical issues, it is highly unlikely that the
> claimant can maintain consistent employment.  (*Id.*)  Dr. Bishop did not, however,
> provide a function-by-function analysis of the claimant's mental abilities and
> limitations.  Broad statements such as Dr. Bishop's, that a claimant is "disabled,"
> "unable to work," "can or cannot perform a past job," or the like, are not medical
> opinions but are administrative findings dispositive of a case, requiring familiarity
> with the Regulations and legal standards set forth therein.  Such issues are
> reserved to the Commissioner, who cannot abdicate the statutory responsibility to
> determine the ultimate issue of disability.  Opinions on issues reserved to the
> Commissioner can never be entitled to controlling weight, but must be carefully
> considered to determine the extent to which they are supported by the record as a

whole or contradicted by persuasive evidence. (*See* SSR 96-5p). In this case, Dr. Bishop's conclusion is contradicted by the claimant's treatment records, which do not reflect symptoms and limitations of disabling severity; by the claimant's clinical findings, which are mild to moderate at most; and by the GAF scores reflected in her records and as assessed by Dr. Bishop herself, indicating only moderate symptoms that are not consistent with her conclusion. Therefore, I have given her opinion little weight.

(TR 40.)    As an initial matter, Plaintiff argues that Dr. Bishop's opinion regarding Plaintiff's ability to maintain consistent employment was not a determination reserved to the Commissioner. (Docket no. 14 at 13.) To support this argument, Plaintiff attempts to reword Dr. Bishop's opinion as, "[P]laintiff's mental impairments are so severe that they are inconsistent with the ability to function on a sustained basis in a normal work environment." (*Id.*) In either form, Dr. Bishop's opinion is essentially a determination that Plaintiff is disabled, and it is well settled that the ultimate issue of disability is reserved to the Commissioner. *Kidd v. Comm'r*, 283 F. App'x 336, 341 (6th Cir. 2008). Plaintiff's claim fails in this regard.

Because Dr. Bishop was not a treating medical source and because Dr. Bishop's opinion that Plaintiff is disabled is an issue reserved to the Commissioner, the ALJ was not required to give full weight to her opinion. As the ALJ noted, in the event that a medical source has provided an opinion on an issue reserved to the Commissioner, an ALJ is required to evaluate the record evidence to determine the extent to which the opinion is supported by the record but is precluded from giving the opinion special significance. SSR 96-5p, 1996 WL 374183, at *3. Here, the ALJ assigned Dr. Bishop's opinion little weight because it was on an issue reserved to the Commissioner and because it was inconsistent with Plaintiff's treatment records, clinical findings, and GAF scores. (TR 40.)

Plaintiff argues that the ALJ's reasoning for discrediting Dr. Bishop's opinion is flawed because Dr. Bishop's opinion is not inconsistent with the record. (Docket no. 14 at 14; docket

13

no. 18 at 8-9.)   While Plaintiff disagrees with the ALJ's determination and points to some evidence to support her perspective, the ALJ's opinion is also supported by substantial evidence. Essentially, Plaintiff is inviting the Court to reweigh the evidence and substitute its own judgment for that of the ALJ, which is not within this Court's purview. *See Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (citation omitted).   The ALJ's determination that Dr. Bishop's opinion is inconsistent with Plaintiff's treatment records, clinical findings, and GAF scores, falls within her zone of choice and should not be disturbed.

Plaintiff also argues that the ALJ erroneously discredited Dr. Bishop's opinion on the basis that Dr. Bishop did not provide a function-by-function analysis of Plaintiff's abilities and limitations.  (Docket no. 14 at 14; docket no. 18 at 7-8.)  It is not clear whether the ALJ intended her statement in this regard to be a factual statement or part of her reasoning to discredit Dr. Bishop's opinion.   The ALJ's actual intentions, however, need not be discerned because, as Defendant points out, it was reasonable for the ALJ to consider the lack of explanation accompanying Dr. Bishop's opinion as a factor in determining that Dr. Bishop's opinion was entitled to little weight.  (Docket no. 17 at 15 (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) and *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)).)  The ALJ was not required to seek further explanation or clarification from Dr. Bishop as Plaintiff suggests, because Dr. Bishop was not a treating source.  SSR 96-5p, 1996 WL 374183, at *2.

Lastly, Plaintiff argues that the ALJ violated HALLEX I-2-8-25D in the process of discrediting Dr. Bishop's decision by relying on extra-record evidence to find that Plaintiff's GAF scores represented moderate symptoms, by not citing to that evidence, and by not including it as part of the record.  (Docket no. 14 at 14; docket no. 18 at 9-10.)  Plaintiff cites no authority that suggests that the ALJ's alleged violation of HALLEX I-2-8-25D constitutes reversible error,

and the Court finds none.  In the absence of a definitive ruling from the Sixth Circuit, district courts within the Circuit have declined to find that a failure to follow the procedures enumerated in HALLEX mandates reversal, absent a convincing showing of prejudice to the plaintiff.  *See Caudill v. Astrue*, No. 09-70-GWU, 2010 WL 148806, at *4 (E.D. Ky. Jan. 14, 2010); *Scarborough v. Astrue*, No. 3:11-CV-286, 2012 WL 6838942, at *5-6 (E.D. Tenn. Dec. 3, 2012); *Kostyo v. Colvin*, No. 3:14-cv-1238, 2015 WL 4067260, at *7 n.4 (N.D. Ohio Jul. 2, 2015).  This Court agrees.  Plaintiff has not demonstrated prejudice as a result of this alleged violation. Indeed, Plaintiff was represented by counsel at both the administrative and appellate levels, who, in their practice of Social Security Disability law, should be inherently aware of or have access to the GAF Scale.  Such a violation of HALLEX does not invalidate the ALJ's reason for discrediting Dr. Bishop's opinion; Plaintiff's argument fails on this issue.  The undersigned finds that the ALJ did appropriately note, discuss, and explain why she did not fully credit Dr. Bishop's opinion.  Plaintiff's Motion should be denied with regard to Dr. Bishop.

## VI.    CONCLUSION

For the reasons stated herein, the Court should GRANT IN PART Plaintiff's Motion for Summary Judgment (docket no. 14) and DENY Defendant's Motion for Summary Judgment (docket no. 17).  This matter should be remanded for proper consideration and discussion of Dr. Pettit's medical opinion as a treating physician in accordance with 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections

constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and

Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern*

*District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


Dated: August 7, 2015                    s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel
of Record on this date.

Dated: Augsut 7, 2015                     s/ Lisa C. Bartlett
                                      Case Manager


16